IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH BLATT,                          )
    Plaintiff                        )
                                     )
    v.                               )       Civil Action No. 12-1738
                                     )       United States Magistrate Judge
COMMONWEALTH OF PENNSYLVANIA            )       Cynthia Reed Eddy
BOARD OF PROBATION AND PAROLE;          )
JOHN E. WETZEL; SHIRLEY MOORE           )
SMEAL; ASSISTANT COUNSEL                )
RANDALL N. SEARS; MICHAEL C.            )
POTTEIGER; SHAWN ADAMCZYK               )
    Defendants.                      )
                                     )

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

Plaintiff, Deborah Blatt, is a former prisoner housed at the Allegheny County Jail.[1]  She

filed this suit pursuant to 42 U.S.C. § 1983 against Defendants Commonwealth of Pennsylvania

Board of Probation and Parole ("PBPP"), Allegheny County Bureau of Corrections ("BOC"),

Secretary of Corrections John E. Wetzel ("Wetzel"), Deputy Secretary of Corrections Shirley

Moore Smeal ("Smeal"), Assistant Counsel Randall N. Sears ("Sears"), Chair of PBPP Michael

C. Potteiger ("Potteiger"), and Parole Agent Shawn Adamczyk ("Adamczyk"), in their individual

and official capacities.  The Defendants argue in their Motion for Summary Judgment that

Plaintiff does not present evidence that could sustain her burden of proving the elements of her

claims against all Defendants, in their official and individual capacities, in violation of her

Eighth Amendment rights for wrongfully incarcerating her past her maximum sentence date.  For

---

[1] In accordance with 28 U.S.C. § 636(c)(1), all parties have consented to have this matter adjudicated by a United States Magistrate Judge. ECF Nos. 5, 12, 15.

the reasons set forth below, this Court agrees with Defendants and will grant their Motion for Summary Judgment.

## II.    Factual Background

On November 28, 2012, Plaintiff filed a Complaint with three counts. Count I alleges that Defendants[2] falsely imprisoned Plaintiff by detaining her intentionally and without legal justification. Complaint, ECF No. 1, 6-7.  Count II alleges that Defendants violated Plaintiff's Eighth Amendment rights by wrongly incarcerating her past her maximum sentence date, constituting cruel and unusual punishment.  Id. at 7-8.  Count III alleges that Defendants violated Plaintiff's Fourteenth Amendment rights by wrongly incarcerating her past her maximum sentence date, violating her substantive and procedural due process rights.  Id. at 8.

Plaintiff contends that she was incarcerated 216 days beyond the maximum date of her state sentence, which was October 27, 2010 by Plaintiff's calculation.  Id. at 3.  She states that she was detained on or about January 8, 2011 as a result of the Defendants' reckless, grossly negligent, or intentional conduct, and was not released until August 11, 2011. Id. at 3, 5. According to Plaintiff, Defendants Wetzel, Potteiger, and the City of Pittsburgh failed to "properly implement the law," which led to her unwarranted detainment. Id. at 5.  She claims Defendants Adamczyk, Smeal, and Sears had an "affirmative duty to properly compute" her maximum sentence date and to release her on this date, but disregarded this duty and Plaintiff's claims "that she was being held illegally." Id. at 5.

On January 22, 2013, Defendant Allegheny County Bureau of Corrections filed a Motion to Dismiss, ECF No. 11, on the grounds that, as a sub-unit of the governing body, Allegheny County, it lacks the capacity to be sued.  Plaintiff apparently agreed, and filed a Notice of Voluntary Dismissal, ECF No. 11, dismissing this defendant on February 25, 2013.

---

[2] Each of Plaintiff's claims is brought against "Defendants" generally.

On January 28, 2014, Defendants Adamczyk, Commonwealth of Pennsylvania PBPP, Smeal, Potteiger, Sears, and Wetzel filed the Motion for Summary Judgment now before the Court. Defendants argue that they did not violate the Eighth Amendment by keeping Plaintiff incarcerated past her true maximum sentence date, because they had no personal involvement with Plaintiff's case, and were not deliberately indifferent to Plaintiff because, as members of the PBPP, they correctly instituted Plaintiff's sentence according to the court's order. On March 7, 2014, Plaintiff filed a Brief in Opposition to Defendants' Motion for Summary Judgment, conceding that:

> [S]ummary judgment is appropriate with respect to the following claims: the Pennsylvania Board of Probation and Parole enjoys immunity pursuant to the Eleventh Amendment to the United States Constitution; to the extent they are sued in their official capacity, moving defendants enjoy immunity pursuant to the Eleventh Amendment to the United States Constitution; Plaintiff has failed to sufficiently allege the personal involvement of Defendants Smeal and Potteiger; Plaintiff's Fourteenth Amendment claim is precluded by the Supreme Court's "explicit source rule"; and Plaintiff was released within a reasonable amount of time after the Department of Corrections was notified by the Pennsylvania Boar[d] of Probation and Parole of Plaintiff's newly calculated maximum sentence date.

ECF No. 33, 1.

Inasmuch as Plaintiff has conceded that the claims against Defendants Pennsylvania Board of Probation and Parole, Smeal, and Potteiger are unfounded, the Court will grant summary judgment in their favor.[3] Plaintiff still contends, however, that summary judgment

---

[3] Plaintiff's false imprisonment claim, and claim against Sears acting in his personal capacity are presumed to be conceded as well, as Plaintiff does not present any evidence to the summary judgment record to refute Defendants' submission to the summary judgment record that these claims have no merit. See Williams v. Bor of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989) (the "'plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment'") (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)). This Court may therefore grant summary judgment for both undisputed claims. See Fed.R.Civ.P 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it.").

should be denied with respect to her Eighth Amendment claims against Defendants Wetzel and Adamczyk acting in their individual capacities.  Id. at 2.

Defendant Wetzel has been the Secretary of Corrections for the Pennsylvania Department of Corrections since May 3, 2011.[4]  In this position he "oversees 25 state correctional institutions, one motivational boot camp, 14 community corrections centers, nearly 40 contract facilities, a training academy, approximately 15,000 employees and more than 51,300 inmates." DOC Press Release, ECF No. 30-1, Exhibit 2.  As part of these duties, he "directly supervises the Executive Deputy Secretary, the Deputy Secretary for Administration and the directors of the Press Office, the Office of Legislative Affairs, the Office of Policy, Grants & Reentry, the Office of Victim Advocate, the Office of Planning, Research & Statistics, and the Office of Inmate Grievances and Appeals."  Pennsylvania Manual Excerpt, ECF No. 30-1, Exhibit 3, *1.

Defendant Adamczyk is a Parole Agent employed by the PBPP in its Pittsburgh District Office.  Complaint, ECF No. 1, 3.  As a Parole Agent, Adamczyk is "generally responsible for providing counseling or supervision of probationers and parolees in the state probation and parole system."  Adamczyk Decl., ECF No. 38-1, Exhibit 22, ¶ 2.  However, he states he has "no responsibility for calculating or determining offender sentences. I would also have no responsibility for sentence recalculations, including those based on parole violations. . . .

---

Defendant provides evidence to the summary judgment record to show that Plaintiff cannot meet the burden to prove her false imprisonment claim, as the PBPP released her within a reasonable amount of time after her sentence was restructured by the DOC.  Defendant provides evidence that Defendant Sears, Deputy Chief Counsel from the DOC, responded to Plaintiff's complaints with an investigation into Plaintiff's sentence, and advised Plaintiff's attorney on how to correct Plaintiff's maximum sentence date.  Plaintiff offers no evidence to argue that despite this investigation, Sears is still liable under the Eighth Amendment.  The Court therefore determines that Sears' response to Plaintiff's complaints of an Eighth Amendment violation was reasonable under the circumstances.

[4] Unless otherwise cited, the following facts are based off of the Defendants' Concise Statement of Material Facts, ECF No. 29, and the Plaintiff's Counter Concise Statement of Material Facts, ECF No. 35.

Furthermore, I have received no training from the Board regarding sentence calculations or sentence recalculations." Id. at ¶ 3.

The summary judgment record reflects that in late 2004, Plaintiff was charged with several criminal offenses in the Court of Common Pleas of Westmoreland County, PA. Westmoreland County Court of Common Pleas Court Summary for Deborah Lee Blatt, ECF No. 30-1, Exhibit 4. On October 28, 2005, the court terminated Plaintiff's bond, and she was to remain detained. Court of Common Pleas of Westmoreland County Criminal Docket, and Sentencing Order, ECF No. 30-1, Exhibits 5, 7.

On August 9, 2007, the court sentenced Plaintiff to confinement for a minimum term of eighteen months and a maximum of sixty months. Sentencing Order, ECF No. 30-1, Exhibit 7. The Order of Court gave Plaintiff "credit for time served" at the date of sentencing, but did not specify the dates Plaintiff was to be credited. Id.

On December 14, 2007, the Board of Probation and Parole issued Plaintiff's sentence profile. PBPP Sentence Profile for Deborah Greene, ECF No. 30-1, Exhibit 8. This listed the effective date of her sentence as July 25, 2006, making Plaintiff's maximum sentence date July 25, 2011. Id. On July 2, 2008, Plaintiff was released on parole. PBPP, Order to Release on Parole, ECF No. 30-2, Exhibit 21. The Order releasing her on parole also set her maximum sentence date as July 25, 2011. Id. There is nothing submitted to the record to suggest that Plaintiff objected to or attempted to change her maximum sentence date to reflect credit for time served from October 28, 2005 to July 24, 2006.

On January 7, 2011, Plaintiff was arrested on new criminal charges in Allegheny County, Pennsylvania.[5] At this time Plaintiff was charged with three technical parole violations for

_____

[5] Plaintiff's PBPP arrest report states she was arrested for retail theft and possession of drug paraphernalia, and because of these charges, her parole was revoked. ECF No. 30-2, Exhibit 10a.

violating two conditions of her parole. Notice of Charges and Hearing, ECF No. 30-2, Exhibit 10e. Plaintiff was still on parole for her 2007 DUI conviction because of the July 25, 2011 maximum sentence date on her sentencing profile and Order to release her on parole.

Plaintiff contends that shortly after her arrest on January 7, 2011, she met with Defendant Adamczyk. During this meeting, she alleges she expressed her belief that she was wrongfully detained, and requested his assistance to resolve her complaints. Blatt Decl., ECF No. 34, ¶¶ 3-4. After this meeting, Plaintiff claims she sent a letter to Mr. Adamczyk reiterating her belief that she was wrongly detained. Id. at ¶ 5. This letter has not been adduced for the summary judgment record, and Plaintiff does not submit any documents supporting her alleged contact with Adamczyk shortly after January 7, 2011.

Defendant Adamczyk denies that he had any "contact with Plaintiff prior to May 18, 2011," and denies that he knew Plaintiff was incarcerated in the Allegheny County Jail at this time. Adamczyk Decl., ECF No. 38-1, Exhibit 22, ¶¶ 10, 16-17. In fact, Adamczyk states he "was never assigned to supervise Plaintiff on parole." Id. at ¶ 5. Adamczyk also does not recall receiving a letter from Plaintiff in January or February 2011. Id. at ¶¶ 18-19. Supporting his version of his contacts with Plaintiff, Mr. Adamczyk offers into evidence Plaintiff's Notice of Charges and Hearing with his signature, dated May 18, 2011, as the first documentation connected with Plaintiff's case that bears his signature. ECF No. 30-2, Exhibit 10e; ECF No. 38-1, Exhibit 22, ¶ 10. Furthermore, he offers records that prior to May 18, 2011, "Plaintiff's parole documentation was signed by R.A. Coughlin." ECF No. 38-1, Exhibit 22, ¶ 7; ECF No. 38-1, Adamczyk Exhibits A-E.

On or around February 9, 2011, Plaintiff sent a letter addressed "To Whom It May Concern" detailing her belief that she was wrongfully detained. Blatt Letter to Defendants Dated

Feb. 9, 2011, ECF No. 34, Exhibit A, 1. Defendants deny any named Defendant personally received or read this letter. Counter Statement of Facts to Plaintiff's Concise Statement of Material Facts, ECF No. 37, ¶ 31. This letter was received by the PBPP's "Office of Chief Counsel" in Harrisburg, PA. PBPP Letter dated May 9, 2011, ECF No. 34-1, Exhibit C. On May 9, 2011, the Pennsylvania Board of Probation and Parole issued a letter to Plaintiff acknowledging receipt of a letter, stating a copy would "be placed in the offender's file and become a permanent part of the record." Id. This letter also states that the issues Plaintiff raised in the letter "must be addressed through the Department of Correction," not the Board of Probation and Parole. Id.

On or around May 10, 2011, Plaintiff sent another letter addressed "To Whom It May Concern" to PBPP, reiterating her belief that she was wrongfully detained and requesting assistance in correcting her maximum sentence date. Blatt Letter (to PBPP) on May 10, 2011, ECF No. 30-2, Exhibit 12, 1. On June 10, 2011, the Board of Probation and Parole acknowledged receipt of the letter as a request for administrative review, and stated it would respond on the merits of the letter as soon as possible. General Counsel Letter Dated June 10, 2011, ECF No. 34-1, Exhibit D. On August 4, 2011, the Board issued a Notice of Board Decision recommitting Plaintiff as a Technical Parole Violator and a Convicted Parole Violator. PBPP Notice of Board Decision, ECF No. 30-2, Exhibit 19. On August 8, 2011, the Board answered Plaintiff's May 2011 letter and stated that her "sentence credit toward [her] parole violation maximum sentence date" was "premature" because "at the time [her] appeal was filed, the Board did not determine any sentence credit issue." PBPP Letter (to Blatt), ECF No. 30-2, Exhibit 14.

Adamczyk states he met with Plaintiff somewhere between May 18, 2011 and June 3, 2011 to attempt to get her to sign parole hearing forms. Adamczyk Decl., ECF No. 38-1, Exhibit 22, ¶ 11. During this conversation, Defendant alleges Plaintiff brought up her concerns about her maximum sentence date, so he "returned to the parole office and talked to [his] supervisor about her claims. However, [their] review of the file indicated that Plaintiff's sentence had been properly calculated, so no further action was taken." Id. He states the only letter he remembers receiving from Plaintiff is dated June 7, 2011. Id. at ¶¶ 18-19. He "did staff this letter with [his] supervisor, who also confirmed that the maximum sentence date shown on the PBPP-10 form was July 25, 2011." Id.

Conversely, Plaintiff claims in her Declaration that on or around June 21, 2011, Defendant Adamczyk visited her in the Allegheny County Jail. Blatt Decl., ECF No. 34-1, ¶ 8. Plaintiff alleges that she spoke with Adamczyk about her concern she was wrongfully detained and showed him a copy of the relevant sentencing transcript to corroborate her concern.[6] Id. Plaintiff says that Adamczyk "advised Plaintiff that she could resolve the issue once she was transported to SCI Muncy." Concise Statement of Material Facts, ECF No. 35, ¶ 34. Defendant disputes this, and states if Plaintiff complained to him about her continued incarceration, he "would have advised Plaintiff that he had no authority to calculate, change or modify her sentence and that her concerns should be raised through the appropriate channels." Counter Statement of Facts to Plaintiff's Concise Statement of Material Facts, ECF No. 37, ¶ 34. See also Adamczyk Decl., ECF No. 38-1, Exhibit 22, ¶ 14.

On or around July 12, 2011, Plaintiff's attorney, Michael E. Waltman, contacted Defendant Randy Sears, the Deputy Chief Counsel from the DOC's Office of Chief Counsel.

---

[6] The only sentencing transcript in the summary judgment record orders Plaintiff "credit for any time served," but does not specify any minimum or maximum sentence dates. Aug. 9, 2007 Sentencing Transcript, ECF No. 34-1, Exhibit F.

Sears Decl., ECF No. 30-2, Exhibit 15, ¶ 3. Attorney Waltman requested that Sears investigate Plaintiff's sentence calculation. In response, on July 27, 2011, Sears sent a letter to Attorney Waltman asserting that "the Department's calculation of [Plaintiff's] sentence includes all of the credit provided by the Court." Sears Letter (to Waltman), ECF No, 30-2, Sears Exhibit A. He also stated that the Board had no authority to modify a Court sentencing order and therefore could not decide whether Plaintiff should have received credit. Id.

Defendants allege that shortly after Attorney Waltman received Sears' letter, Plaintiff filed a Motion for Credit for Time Served with the sentencing court. On August 4, 2011, the Court's docket reflects that such a motion was granted, clarifying that Plaintiff was to have been given credit for time served from October 27, 2005. Court of Common Pleas of Westmoreland County Sentencing Order, ECF No. 30-2, Exhibit 16. (Plaintiff denies she filed a formal motion and claims she instead telephoned the court's chambers. This dispute is not material.) The DOC subsequently recalculated Plaintiff's sentence based on the court's Order. Sears-Wood Emails, ECF No. 30-2, Sears Exhibits C-D. On August 10, the Board reviewed the court's August 4, 2011 Order and the DOC's recalculation, and rescinded their Notice of Board Decision of August 4, 2011 responding to Plaintiff's May 10, 2011 letter. PBPP Sentence Profile for Deborah Greene, ECF No. 30-2, Exhibits 17, 19-20. The Board then adjusted Plaintiff's minimum and maximum sentence dates, providing a new maximum date of October 27, 2010. PBPP Sentence Profile, DOC Sentence Status Summary, ECF No. 30-2, Exhibits 17-18. Plaintiff was released from custody the next day.

### III.    Standard of Review

### Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "A fact is material if it might affect the outcome of the suit under the governing law.  Burton v. Teleflex Inc., 707 F.3d 417, 425 (3d Cir. 2013) (citing Scheidemantle v. Slippery Rock Univ. State Sys. Of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006)).

The non-moving party cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument, but must "put up or shut up."  Berckeley Inv. Group., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) (quoting Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109-10 (3d Cir. 1985)).  Plaintiff must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admission) to meet his burden of providing elements essential to his claim.  Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).  See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue."  Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material.  Liberty Lobby,

477 U.S. at 255. The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991) (quoting Liberty Lobby, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 322; UPMC Health Sys. V. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Williams v. Bor. of West Chester, 891 F.2d at 460-61 (non-movant must present affirmative evidence – more than a scintilla but less than a preponderance – which supports each element of his claim to defeat a properly presented motion for summary judgment).

A party claiming that a fact cannot be or is genuinely disputed must support that assertion either by:

> (A)     citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B)     showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

A "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). An "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affidavit or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4).

Rule 56 was amended, effective December 2010, "to provide that a declaration, that is an unsworn statement subscribed to under penalty to perjury, can substitute for an affidavit." Hayden v. Westfield Ins. Co., 2013 WL 5781121, *7, n.3 (W.D. Pa. 2013) (citing Fed.R.Civ.P. 56 Advisory Committee Note to 2010 Amendments ("Subdivision (c)(4) carries forward some of the provisions of the former subdivision (e)(1). . . . A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit."); Ray v. Pinnacle Health Hosps., Inc., 416 F. App'x 157, 164 n.8 (3d Cir. 2010) ("unsworn declarations may substitute for sworn affidavits where they are made under penalty of perjury and otherwise comply with the requirements of 28 U.S.C. § 1746").

It is the obligation of the parties to pinpoint specific portions of the record which they argue support their characterizations of the material undisputed facts and their positions. Rule 56(e) provides:

> (e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Similarly but somewhat more pointedly, under our local rules, a motion for summary judgment must be accompanied by a "separately filed concise statement setting forth the facts essential for the Court to decide the motion for summary judgment, which the moving party contends are undisputed and material. . . . A *party must cite to a particular pleading, deposition, answer to interrogatory, admission on file or other part or the record* supporting the party's statement, acceptance, or denial of the material fact." LCvR 56.B.1 (emphasis added). The same is required of a plaintiff's responsive statement of material facts. LCvR 56.C.1. See Bowman v. Mazur, 2010 WL 2606291, *3, n.1 (W.D. Pa. 2010) ("Plaintiff's responsive statement of material facts is insufficient to create a genuine issue of material fact because it failed to comply" with Local Rule 56.C.1 in that it failed to cite to specific portions of the record. Court therefore ignored Plaintiff's denials in his responsive statement of material facts and deemed "admitted those very facts that he sought to deny.").

### IV.    Legal Analysis

### A.    Eighth Amendment

"To establish a claim under Section 1983, a plaintiff 'must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law.'" Goodwine v. Keller, 2012 WL 4482793, at *4 (W.D. Pa. 2012) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008)). Here, Plaintiff alleges Defendants Wetzel and Adamczyk, while acting in their individual capacity, deprived her of her Eighth Amendment rights by wrongfully incarcerating her past her maximum sentence date.

The Eighth Amendment protects against "cruel and unusual punishment." U.S. CONST. Amend VIII. To prove an Eighth Amendment violation occurred, a plaintiff must prove she was punished, and that her punishment was cruel and unusual. Sample v. Diecks, 885 F.2d 1099, 1107-08 (3d Cir. 1989). Imprisonment beyond a prisoner's proscribed term of incarceration constitutes "punishment within the meaning of the eighth amendment." Id. (citations omitted). Punishment is cruel and unusual when it "causes the unnecessary and wanton infliction of pain or is grossly disproportionate to the severity of the crime." Askew v. Kelchner, 2007 WL 763075, at *4 (M.D. Pa. 2007) (citations omitted). Unnecessary punishment includes incarceration "without penological justification." Askew, 2007 WL 763075 at *4 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). The continued incarceration must not result from an "unforeseeable or inadvertent mistake." Id. See also Sample, 885 F.2d at 1108-09 ("The administration of a system of punishment entails an unavoidable risk of error. . . . [S]uch accidents or mistakes are a necessary cost of any prison system . . . and do not violate the eighth amendment."). However, if a prisoner can show the defendants "acted with deliberate indifference," then any punishment past the prisoner's term is cruel and unusual. Granberry v. Chairman of Pa. Bd. of Prob. and Parole, 396 F. App'x 877, 880 (3d Cir. 2010).

Cases where a prisoner is detained beyond his or her maximum sentence date are "extremely rare." Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993). To establish that her incarceration was cruel and unusual punishment prohibited by the Eighth Amendment, the plaintiff must prove the following:

> [A] plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must demonstrate a causal connection

between the official's response to the problem and the infliction of the unjustified detention.

Sample, 885 F.2d at 1110. In addition, the deprivation of the plaintiff's Eighth Amendment right must be sufficiently serious to bring a section 1983 action. Campbell v. Illinois Dep't of Corr., 907 F. Supp. 1173, 1179 (N.D. Ill. 1995).

To determine whether an official acted with deliberate indifference, it is necessary to look at "the scope of the official's duties and the role the official played in the everyday life of the prison." Moore, 986 F.2d at 686 (citing Sample, 885 F.2d at 1110). Therefore, if an official knows that given his "job description or the role he or she has assumed in the administration of the prison, a sentence calculation problem will not likely be resolved unless he or she addresses it or refers it to others, it is far more likely that the requisite attitude will be present." Sample, 885 F.2d at 1110. Deliberate indifference is present if an official "recklessly disregard[s] a substantial risk of serious harm." Granberry, 396 F. App'x at 880 (citing Farmer v. Brennan, 511 U.S. 825, 836 (1994)).

### 1. Defendant Wetzel

Summary judgment is appropriate for Wetzel because no reasonable jury could conclude from the evidence before this Court that he had "knowledge" of Plaintiff's unwarranted punishment. To prove a violation of a prisoner's Eighth Amendment rights, a defendant must have personal involvement and knowledge of the violations alleged. Evanche v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). See also Powell v. Weiss, 2014 WL 3056535, at *4 n.1 (3d Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Personal involvement "can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evanche, 423 F.3d at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

The doctrine of respondeat superior has been rejected as a basis for liability under section 1983. Rizzo v. Goode, 423 U.S. 362 (1978). Supervisory officials are only liable in civil rights actions if they affirmatively encourage or cause the violation. See Boone v. Nose, 2013 WL 819730, at *4 (W.D. Pa.), aff'd, 530 F. App'x 112 (3d Cir. 2013); Williams v. Bickell, 2012 WL 5379171 (M.D. Pa. 2012), report and recommendation adopted, 2012 WL 5379185 (numerous citations omitted) (holding that defendant Wetzel was not personally involved merely by virtue of his position as Secretary for the Pennsylvania DOC). To be personally involved, the supervisor must direct the actions of his supervisees, or know and acquiesce in the supervisee's actions. Rode, 845 F.2d at 1207. See also Granberry, 396 F. App'x at 880-81 (finding the Secretary, Chairman, and Superintendent of the Board of Probation and Parole had no personal involvement). Furthermore, the "denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement." Goodwine, 2012 WL 4482793, at * 7 (citing Pressley v. Beard, 255 F. App'x 216, 218 (3d Cir. 2008)).

Plaintiff does not offer any evidence to support her allegation that Wetzel had actual knowledge that Plaintiff was incarcerated past her maximum sentence date. Plaintiff alleges she sent two "To Whom It May Concern" letters complaining of her wrongful incarceration to the PBPP at its Office of Chief Counsel in Harrisburg. These were filed by the PBPP office of Case Management as a request for administrative review. PBPP Letter, ECF No. 34, Exhibit C. She does not provide any evidence that Wetzel personally viewed these letters, or was briefed on her complaint. There is therefore no evidence on the record that could lead a reasonable jury to determine that Wetzel had knowledge of Plaintiff's situation, and her claim against him fails at the first element.

Plaintiff also argues that, as Secretary of Corrections for the Pennsylvania Department of Corrections, Wetzel is "responsible for the final disposition of all grievance appeals from inmates." DOC Press Release, ECF No. 30-1, Exhibit 2. This essentially argues Wetzel is liable through the doctrine of respondeat superior, which has been soundly rejected as a basis of liability under section 1983. See Rizzo, 423 U.S. 362, 375-76 (1978) (holding supervisory officials have no duty for their employees' actions when there is no "statistical pattern of misconduct"); Evanche, 423 F.3d at 353 (holding that personal involvement liability cannot be solely based on supervisory liability); Boone, 2013 WL 819730 at *4. Instead, to be liable Wetzel must have personally participated in the violation of the prisoner's rights, directed others to violate the prisoner's rights, or had knowledge of and acquiesced in his subordinates' violations. See Boone, 2013 WL 819730 at *4; Williams, 2012 WL 5379171, at *5 (citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293–95 (3d Cir. 1997)). As Defendant Wetzel oversees upwards of 51,300 inmates, he cannot and is not expected to be aware or responsible for all complaints filed with the Board. See Powell, 2014 WL 3056535 at *4; Rode, 845 F.2d at 1208; Williams v. Bickell, 2012 WL 5379171 at *6.[7]

There is no need to proceed with an evaluation of whether Wetzel was deliberately indifferent to Plaintiff's complaints about her sentence, as a reasonable jury could not conclude

---

[7] Alternatively, a supervisor can be liable if he or she created or enforced a policy which caused a constitutional violation of a prisoner's rights. "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" A.M. ex rel. J.M.K v. Luzerne Cnty. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). Plaintiff provided no evidence that a Board policy exists which would inherently cause her to be incarcerated past her maximum sentence date.

he had actual knowledge of alleged unwarranted incarceration. Summary judgment will be granted for Plaintiff's claim against Wetzel.

### 2.  Defendant Adamczyk

Summary judgment must also be granted for Defendant Adamczyk because Plaintiff has not offered sufficient evidence to prove Adamczyk was deliberately indifferent to her complaints, or that his response to her complaints was casually connected to her continued incarceration.

The first step in the Sample analysis is "knowledge." 885 F.2d at 1110. Adamczyk did have personal knowledge of Plaintiff's complaint of unjustified detention; however, the parties dispute the date Adamczyk became aware of Plaintiff's complaint. Defendant Adamczyk alleges that he was not involved in Plaintiff's case until May 18, 2011, when he signed her arrest report. Furthermore, he has submitted evidence showing another parole agent was handling and signed documents related to Plaintiff's case before this date. Adamczyk Decl., ECF No. 38-1, Exhibit 22, ¶ 7. Conversely, Plaintiff alleges she met with Adamczyk shortly after her arrest on January 8, 2011 and wrote him a letter in February 2011, both times communicating her complaint that she was being held past her correct maximum sentence date. Although Adamczyk's version is supported by record evidence, unlike Plaintiff's, this court cannot make a determination of credibility, which is a matter for the jury. The circumstances of Defendant Adamczyk's knowledge are disputed, and while this is a material dispute, it is not dispositive.

In addition to knowledge, Plaintiff must show "that the official either failed to act or took only ineffectual action under circumstances indicating that this or her response to the [violation of a prisoner's Eighth Amendment right] was a product of *deliberate indifference* to the prisoner's plight." Sample, 885 F.2d at 1110 (emphasis added). Deliberate indifference is based

on the official's subjective, actual knowledge of the substantial risk to the deprivation. Campbell, 907 F. Supp. at 1179. This knowledge is gathered from the circumstances of the official's duties and responsibilities. Moore, 986 F.2d at 686 (citing Sample, 885 F.2d at 1110). A prison official must know that, "given his or her job description or the role he or she had assumed in the administration of the prison, a sentence calculation problem will likely not be resolved unless he or she addresses it or refers it to others." Id. For example, if a prison official has "the access and ability to address a prisoner's legitimate complaint" then he has "a duty to do so." Chappelle v. Varano, 2013 WL 5876173, at *12 (M.D. Pa. 2013).

Courts have found that an official was not deliberately indifferent when the official provided evidence that he or she investigated the prisoner's complaints. See id. at 687 (holding that a five month investigation was not "so inept or ineffectual that deliberate indifference on [sic] the part of the parole board officials may be inferred from the evidence here"); Reynolds v. Commonwealth of Pa. Dep't of Corr., 2010 WL 5437283, at *4 (M.D. Pa. 2010) (discussing a finding of no deliberate indifference when the parole board began to investigate the prisoner's complaint about his sentencing calculation). If an official has a duty to help a prisoner after the prisoner complains about his or her wrongful detention, and fails to reasonably investigate, either through inadequate action or by ignoring the prisoner's complaints, the official is deliberately indifferent to the prisoner. See Chappelle, 2013 WL 5876173 at *12 (holding an official with a duty to investigate must conduct a reasonable inquiry into a prisoner's complaints). Deliberate indifference typically occurs in cases "where prison officials were put on notice and then refused to investigate a prisoner's claim of sentence miscalculation." Moore, 986 F.2d at 686.

The standard of deliberate indifference is articulated in Granberry:

To act with deliberate indifference is to recklessly disregard a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 836 (1994). Because the

standard is recklessness, "prison officials who actually knew of a substantial risk to a prisoner's protected right may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."

396 F. App'x at 880 (quoting Farmer, 511 U.S. at 844). The fact that an official made a mistake calculating a prisoner's sentence is not enough, as "allegations of negligence alone will not suffice to make out a constitutional tort." Id. (citing Daniels v. Williams, 474 U.S. 327 (1986)). This Court cannot determine that Defendant Adamczyk was deliberately indifferent as a matter of law unless it is objectively clear from the record he had no duty to investigate Plaintiff's sentence, or his investigation was unreasonable.

There is a material dispute as to whether Defendant Adamczyk was deliberately indifferent to Plaintiff's complaints of unjustified incarceration. Plaintiff alleges in her Declaration that she told Adamczyk of her wrongful detention in late January of 2011, and consistently complained to him throughout her incarceration at the Allegheny County Jail. Adamczyk alleges in his Declaration that he did not meet with Plaintiff until early June of 2011, and once he learned about her situation, he consulted with his supervisor and found her sentence was computed according to the sentencing order. Neither party submits evidence to corroborate their Declarations, creating another dispute of credibility with regard to a material fact. However, this dispute is not dispositive because it was not within the scope of Adamczyk's responsibilities to investigate Plaintiff's sentence calculation or respond to her complaints.

Plaintiff offers no evidence on the summary judgment record to prove that Adamczyk had any duty to assist her with her concerns about her sentence or investigate her sentence calculation. See Harris v. Milgram, 2011 WL 3328513 at *5 (D.N.J. 2011) (granting summary judgment for the official, the prison Administrator, when plaintiff did not provide evidence that

the official had any role in calculating work and commutation credits or that the official had a duty to investigate the accuracy of the prisoner's credit records).

Even assuming *arguendo* that Adamczyk had a duty to investigate Plaintiff's sentence after she complained she was being held beyond her maximum sentence date, the scope of his investigation would be limited by the scope of his duties and role played as a field parole officer. Adamczyk states he has "no responsibility for sentence recalculations, including those based on parole violations." Adamczyk Decl., ECF No. 38-1, Exhibit 22, ¶ 2. From the evidence provided to the summary judgment record, it was not within the scope of Adamczyk's authority to investigate Plaintiff's complaints or assist her in changing her maximum sentence date. It is clear that Adamczyk had no power to reevaluate Plaintiff's sentence after looking at the steps Defendant Sears took in response to Plaintiff's complaints about her unjustified detention. Sears, who is an employee of the DOC and had a duty to investigate Plaintiff's calculation, "reviewed the pertinent records and concluded that the DOC had properly calculated Blatt's sentence based on the credit information supplied by the sentencing court; Sears further determined that the DOC would need an order from the sentencing court to apply any additional credit to her sentence." Brief in Support for Motion for Summary Judgment, ECF No. 28 at 20; Sears Decl., ECF No. 34-2, Exhibit 15, ¶ 4. Sears' statement clarifies that Plaintiff's recourse for correcting her maximum sentencing date was through the sentencing court.

"Finally, the plaintiff must demonstrate a *causal connection* between the official's response to the problem and the infliction of the unjustified detention." Sample, 885 F.2d at 1110 (emphasis added). Because the named defendants were not authorized to calculate or modify a sentence, they did not cause her continued incarceration through deliberate indifference, and the Court must find that defendant Adamczyk was not responsible for

plaintiff's detention past her maximum sentence date.  See Goodwine, 2012 WL 4482793, at *8 ("Plaintiff cannot and, indeed, has not alleged that any of the DOC Defendants were authorized to override [the PBPP's] determination" of Plaintiff's sentence calculation.  Plaintiff's complaint "fails to allege a plausible claim against any DOC defendant").

Plaintiff names as defendants employees of the DOC and PBPP, neither of which have the authority to modify a sentencing order.  The DOC calculates sentences according to court order; it "does not have the 'power to change sentences, or to add or remove sentencing conditions, including credit for times served; this power is vested in the sentencing court.'" Evans v. Sec'y Pa. Dep't of Corr., 645 F.3d 650, 654 n.5 (3d Cir. 2011) (quoting Commonwealth v. Mann, 957 A.2d 746, 749 (Pa. Super. Ct. 2008)).  The PBPP follows the DOC's calculation; it has no authority to calculate a prisoner's minimum and maximum dates of incarceration. Nickson v. Pa. Bd. of Prob. and Parole, 880 A.2d 21, 24 (Pa. Commw. Ct. 2005).

In light of this delineation of the scope of the DOC's and PBPP's duties and authority, Plaintiff provides no evidence to the summary judgment record that Adamczyk, as an employee of the Board, could in fact authorize a change in her maximum sentence date.  In fact, Plaintiff concedes that neither "the DOC or the Board could [] award credit until the sentencing court ordered [them] to do so."  Brief in Opposition to Motion for Summary Judgment, ECF No. 33, at 9.  Once the court did order Plaintiff credit from October 27, 2005, the DOC promptly recalculated Plaintiff's sentence, and the PBPP promptly rescinded its Board Action characterizing Plaintiff's complaint as premature, and released Plaintiff.  See Response to Concise Statement of Material Facts, ECF No. 29, at ¶¶ 24-27.  Therefore, the Court concludes that no reasonable jury could find Adamczyk's actions caused the Plaintiff's continued incarceration past her maximum sentence date.

**B.     Qualified Immunity**

The doctrine of qualified immunity "shields public officials from § 1983 damage actions if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Scott v. Baldwin, 720 F.3d 1034, 1036 (8th Cir. 2013) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  To determine if an official is entitled to qualified immunity, courts apply a two-step process: determine whether the defendant(s) violated the Plaintiff's constitutional right, and determine whether that right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  See Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006); Askew, 2007 WL 763075, at *3.

The court can analyze these two factors in either order "in light of the circumstances in the particular case at hand."  Montanez v. Thompson, 603 F.3d 243, 250 (3d Cir. 2010) (quoting Pearson, 555 U.S. at 236).  At the summary judgment stage, the court analyzes qualified immunity along with its analysis of the merits of the claim.  Askew, 2007 WL 763075 at *3 (citations omitted).  "[I]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."  Montanez, 603 F.3d at 251 (quoting Saucier, 533 U.S. at 202).

For a right to be clearly established in a qualified immunity analysis, the right must be "sufficiently clear that a reasonable official would understand that what [he or she] is does violates that right. . . . [I]n the light of pre-existing law the unlawfulness must be apparent." Askew, 2008 WL 763075 at * 7-8 (quoting Bruenke v. Seip, 225 F.3d 290, 299 (3d Cir. 2000)). Plaintiff had a clear right under the Eighth Amendment not to remain incarcerated without justification past her maximum sentence date.

However, for the reasons set forth above in discussion of the merits of Plaintiff's claims, defendant Adamcyzk was not deliberately indifferent to Plaintiff's Eight Amendment rights and

his "failure to investigate" did not cause her extended incarceration. Thus, defendant is entitled to qualified immunity for his actions or inactions.

### C. Statute of Limitations

The statute of limitations for section 1983 claims is governed by the personal injury statute of limitations of the state where the cause of action arose. Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007)). The statute of limitations for a section 1983 claim arising in Pennsylvania is two years. Kach, 589 F.3d at 634 (citing 42 Pa. Cons. Stat. § 5524(2)). A cause of action accrues for statute of limitations purposes when the plaintiff "knows or has reason to know of the injury that constitutes the basis of the cause of action." Holness v. Wetzel, 2013 WL 5675511, at *8 (M.D. Pa. 2013) (citing Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998)).

In general, the statute of limitations begins when an initial violation of a plaintiff's rights occurs, even if there are actions that follow this violation which cause injury to the plaintiff. Cibula v. Fox, ___ F. App'x ___, 2014 WL 2884122, at * 2 (3d Cir. 2014). However, the continuing violations doctrine may extend the statute of limitations when the defendant's actions are "part of a continuing practice" if the "last act of the continuing practice is within the limitations period." Id., 2014 WL 2884122 at *1-2 (quoting Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001)). The continuing violations doctrine does not apply when the defendant's actions are independent of the original violation. See Sameric, 142 F.3d at 599-600 (holding that a defendant's actions related to the initial violation, but which created an independent claim, do not toll the running of the statute of limitations). For example, in Cibula v. Fox, the Court of Appeals for the Third Circuit held that the continuing violations doctrine did not apply because the defendants' actions which gave rise to the prisoner's injury were results of

the original violation of the prisoner's constitutional right, rather than part of a practice. 2014 WL 2884122 at \*5 ("Even assuming disclosure occurred within the limitations period, we agree with the District Court that the abuse and harassment Cibula allegedly suffered as a result of these disclosures is best viewed as 'merely the consequences of the original act of deeming [him] a sex offender in 2007.'").

Similarly, Plaintiff's arrest on January 7, 2011 may have been the ultimate *consequence* of her incorrect maximum sentence date of July 25, 2011, but the setting of her maximum sentence date error occurred in 2008. Although Plaintiff claims her injury is her continued incarceration after her arrest, Defendants' actions in maintaining her incarceration were independent consequences of the incorrect sentence date. This date appeared on Plaintiff's Order releasing her on parole on July 2, 2008. Therefore, "Blatt tacitly acknowledged the then existing maximum sentence date by signing the Order releasing her on parole . . . [and] failed to take action to correct her unlawfully extended incarceration" until she was detained in 2011. Brief in Opposition to Motion for Summary Judgment, ECF No. 33, 2-3. See also PBPP Notice of Board Decision, ECF No. 30-2, Exhibit 20. Plaintiff had reason to know that her maximum sentence date was incorrect more than two years before she filed her Complaint on November 28, 2012. The PBPP's Order to Release on Parole of July 2, 2008 put Plaintiff on notice of the potential for consequential injuries, including incarceration past her true maximum sentence date. Therefore, this action is barred by the statute of limitations for section 1983 claims.

Plaintiff does not adduce sufficient evidence from which a reasonable jury could determine that Defendants Adamczyk or Wetzel violated Plaintiff's Eighth Amendment rights, and are liable under Section 1983, for keeping her incarcerated past her maximum sentence date. Accordingly, the Court will grant Defendants' Motion for Summary Judgment and will enter a separate Order to that effect.

August 4, 2014

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all counsel of record